**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 25–cv–03747–RMR–MDB

SCOTT BATLEY,

Plaintiff,

v.

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,

Defendant.

---

# ORDER

---

This matter is before the Court on Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing's ("Shellpoint") Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 29. Plaintiff filed his Opposition to Defendant's Motion to Dismiss, ECF No. 38. Shellpoint filed its Reply in Support of Its Motion to Dismiss, ECF No. 42. For the reasons stated below, Shellpoint's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND

According to his First Amended Complaint ("FAC"), Plaintiff Scott Batley ("Plaintiff") purchased a home located in Colorado Springs, Colorado in December 2021. ECF No. 23 at ¶ 1 ("FAC"). The purchase was financed through a loan from Caliber Home Loans ("Caliber"), insured by the Department of Veterans Affairs (the "VA"). *Id.* ¶ 2. The following

year, Plaintiff was notified that the Deed of Trust had been transferred from Caliber to Shellpoint, which is currently the servicer and owner of Plaintiff's mortgage. *Id.* ¶ 3.

In the years following the purchase of his home, Plaintiff suffered multiple financial hardships that impacted his ability to make his monthly mortgage payment. *Id.* ¶¶ 12-15. As a result of his financial hardships, Plaintiff requested a loan modification from Shellpoint and received a three-month forbearance beginning in August 2024. *Id.* ¶¶ 15-16. Plaintiff alleges that in November 2024 he completed a loss mitigation packet over the phone and requested a loan modification or other home retention options from Shellpoint, also by phone, specifically noting that he believed he would be eligible for the VA Servicing Purchase Program ("VASP"). *Id.* ¶ 17. Plaintiff alleges Shellpoint verbally confirmed in November that his loss mitigation application was complete and indicated it would follow the proper loss mitigation procedures. *Id.* ¶¶ 33-34. Thereafter, Shellpoint sent Plaintiff a letter stating that Plaintiff's loss mitigation application was complete on December 12, 2024. *Id.* ¶ 35; ECF No. 23-1 at 1.

On January 7, 2025, Shellpoint sent Plaintiff a letter stating that it had evaluated him for a standard loan modification but was "unable to achieve an affordable payment by re-amortizing the outstanding debt for 360 months at the market rate." FAC ¶ 37; ECF No. 23-1 at 2-4. After receiving this letter, Plaintiff alleges he continued to request status updates on the VASP application he believed was in progress and was told he was being evaluated for VASP. FAC ¶¶ 40-41. Plaintiff alleges in January 2025, he went directly to the VA's loan handling department to obtain a status update on his VASP application and was told they were still waiting for Shellpoint to complete two steps. *Id.* ¶¶ 47-48.

According to Plaintiff, at some point between January and May 2025, a Shellpoint representative verbally offered him a repayment plan, but Plaintiff responded that the repayment plan would not be affordable for him. *Id.* ¶¶ 49-51.

In May 2025, after the VASP's closure, Plaintiff alleges he learned from the VA that Shellpoint never completed his VASP application. *Id.* ¶ 54. On May 21, 2025, Shellpoint sent Plaintiff a letter stating that it had "been unable to gather the required information needed to finalize review of [his] loan for mortgage assistance" and that it would be "closing out the current request at the time . . . ." *Id.* ¶ 56; ECF No. 23-1 at 5. At some point thereafter, Shellpoint agreed to move forward with a loan modification that Plaintiff alleges increased his rate from his initial 3.125% to 4.25% and extended the loan term by 120 months, which raised his estimated monthly payment from $2,843.90 to $3,129.64. FAC ¶ 58. Plaintiff claims that if Shellpoint had made a proper and timely application to VASP on his behalf, he would have been able to convert his loan to a VA-owned loan with an interest rate of 2.5% over either 360 or 480 months. *Id.* ¶ 62.

On September 2, 2025, Plaintiff, through counsel, sent Shellpoint a Qualified Written Request ("QWR") with Notice of Error ("NOE") and Request for Information ("RFI"). *Id.* ¶ 65; ECF No. 23-1 at 6-8. The NOE asserted Shellpoint had failed to honor Plaintiff's request for loss mitigation and evaluate him for all loss mitigation options, including, but not limited to, his request for a timely referral of his loan to VASP prior to its closure. FAC ¶¶ 66-68. The RFI requested communications records between Shellpoint and the VA regarding Plaintiff's VASP application and written documentation of any and all loss mitigation options offered to Plaintiff in writing or over the phone. *Id.*

¶¶ 69-71. Shellpoint responded two days later acknowledging receipt and indicating it was working to gather the requested information and would forward it as soon as possible. FAC ¶ 72, ECF No. 23-1 at 9-10. On September 19, 2025, Shellpoint sent a letter to Plaintiff's counsel indicating it had not received authorization from Plaintiff to discuss the loan associated with his property. FAC ¶ 73; ECF No. 23-1 at 11-13. Plaintiff alleges he had already provided third party authorization, but nevertheless provided another third party authorization. FAC ¶ 73. On October 7, 2025, Shellpoint responded to a follow-up from Plaintiff's counsel and indicated that the request was complex and requested an extension of time to respond. *Id.* ¶ 77; ECF No. 23-1 at 19-23. On October 14, 2025, Shellpoint provided a response to the QWR, which Plaintiff alleges is inadequate and incomplete. FAC ¶ 79.

Based on these allegations, Plaintiff asserts two claims against Shellpoint for purported violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") and its implementing regulations 12 C.F.R. part 1024 ("Regulation X"), as well as claims for breach of contract, violation of C.R.S. § 38-40-103, and negligence per se stemming from the aforementioned statutory violations. *See generally* FAC. Among other damages, he seeks accrued interest and fees, the difference between the payments required under his current modification and those he contends he would have owed under VASP, emotional distress damages, statutory damages, and other

compensatory damages. *Id.* ¶ 82. Shellpoint moves to dismiss all five claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A district court may consider documents attached to a complaint, or referred to and/or relied upon in a complaint if not attached, when evaluating a motion to dismiss under Rule 12(b)(6). *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (exhibits attached to complaint, all materials referenced in complaint, and materials subject to judicial notice, including materials in state court file prior to removal, are properly considered when evaluating a motion to dismiss under Rule 12(b)(6)).

A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins*,

519 F.3d at 1247 (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ANALYSIS

### A. First Claim for Relief

Plaintiff's First Claim for Relief alleges Shellpoint violated Section 2605(k)(1)(E) of RESPA and § 1024.41(c) of Regulation X by failing to timely and properly evaluate all loss mitigation options available to Plaintiff and failing to provide the required written notice to Plaintiff regarding that evaluation. ECF No. 23 ¶¶ 83-101.

Shellpoint argues Plaintiff fails to state a claim because Shellpoint complied with § 1024.41(c)(1)(ii) (Requirements for Evaluation of Complete Application) when it provided its January 7, 2025 denial letter within 30 days of determining Plaintiff's application was complete, and because, under § 1024.41(c)(1), a servicer has discretion as to how to evaluate loss mitigation options. ECF No. 29 at 5-6. Shellpoint also argues that in his opposition to the Motion Plaintiff improperly attempts to amend the FAC to add new claims by alleging for the first time that Shellpoint failed to provide "a Written Notice of a Complete Application" as required by 12 C.F.R. § 1024.41(b)(2)(i)(B) (5-day Notice Requirement After Receipt of Loss Mitigation Application to Determine if Complete or Incomplete) or (c)(3)(i) (5-day Notice Requirement for Notice of Complete Application)

and asks that the Court not consider any alleged violations of those provisions. ECF No. 42 at 3-4.

1. New Arguments

As an initial matter, the Court declines to consider Plaintiff's argument, raised for the first time in his response to the Motion, that Shellpoint violated 12 C.F.R. § 1024.41(b)(2)(i)(B) or (c)(3)(i). Plaintiff's FAC does not assert a violation of either provision, and Plaintiff may not amend his pleadings through arguments raised in response to a motion to dismiss. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted); *Wilson v. Jenks*, Case No. 12–CV–02495–RM–KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014). Accordingly, the Court confines its analysis of Plaintiff's first claim for relief to the violations alleged in the FAC, including Plaintiff's alleged violations of 12 U.S.C. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41(c)(1).

2. Timeliness of Evaluation

Under section 2605(k)(1)(E) of RESPA, a "servicer of any federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). As to Plaintiff's first claim for relief, the relevant regulation provides that when a servicer receives a "complete loss

mitigation application more than 37 days before a foreclosure sale," the servicer must, within 30 days of receiving the application, "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower." 12 C.F.R. § 1024.41(c)(1). Plaintiff alleges Shellpoint failed to complete the required evaluation within 30 days of receiving his complete loss mitigation application. According to Plaintiff, Shellpoint verbally confirmed in November 2024 that his application was complete, but did not provide its evaluation until January 7, 2025, when it informed Plaintiff that he had been denied a standard loan modification. ECF No. 23 ¶¶ 33, 37-39. Shellpoint responds that the December 12, 2024 letter attached to the FAC establishes that Plaintiff submitted a complete loss mitigation application on December 12, 2024. ECF No. 29 at 5; ECF No. 23-2 at 1. Because Shellpoint issued its denial letter on January 7, 2025, Shellpoint contends that it complied with § 1024.41(c)(1)'s 30-day requirement. ECF No. 29 at 5.

"A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). Plaintiff alleges he submitted his loss mitigation application in November 2024 and received verbal confirmation from Shellpoint that it was complete that same month. ECF No. 23 ¶ 33. Defendant, however, contends that the Court need not accept this allegation as true because it is contradicted by the December 12, 2024 letter attached as an exhibit. ECF No. 42 at 2. It is true that the Court "need not accept .

. . allegations plainly contradicted by properly considered documents or exhibits*, Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). But here, the December 12, 2024 letter does not necessarily contradict Plaintiff's allegation that Shellpoint had previously confirmed receipt of his complete loss mitigation application. Rather, the letter says that Shellpoint had "recently received an application" and "determined that your application is complete as of 12/12/2024 . . . ." ECF No. 23-1 at 1. Thus, the letter does not establish when Shellpoint *received* the completed application and does not plainly contradict Plaintiff's allegation that it received the completed application in November 2024. At this stage, the Court therefore accepts Plaintiff's well-pleaded allegation that Shellpoint confirmed in November 2024 that his application was complete. Because Plaintiff alleges that Shellpoint did not provide its determination until January 7, 2025, more than 30 days later, Plaintiff has plausibly alleged that Shellpoint failed to comply with the timing requirement of § 1024.41(c)(1).

3. Sufficiency of Written Notice

Plaintiff also alleges Shellpoint failed to provide him "a sufficient 1024.41(c)(1)(ii) written notice describing that he had been evaluated for all available loss mitigation options under the waterfall, the reason for the denial or approval of each option, and his rights to appeal . . . ." FAC ¶ 90. Specifically, Plaintiff alleges Shellpoint had an obligation to "move forward with VASP" and, despite Plaintiff's "obvious eligibility, Shellpoint failed to do so." *Id.* ¶ 95. Shellpoint argues § 1024.41(c)(1)(ii) does not require a servicer to identify every loss mitigation option considered or explain why each option was denied and does not allow a borrower to dictate the manner of a servicer's loss mitigation

evaluation. ECF No. 29 at 5-6; ECF No. 42 at 4-5. Thus, Shellpoint contends its January 7, 2025 letter complies with § 1024.41(c)(1) and Plaintiff's allegations do not establish otherwise. *Id.*

Section 1024.41 dictates how a servicer must evaluate and respond to a completed loss mitigation application. Subsection (c)(1)(i) requires that after receiving the completed application, the servicer must evaluate the borrower for all loss mitigation options available, while subsection (c)(1)(ii) requires the servicer to "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower . . . ." 12 C.F.R. § 1024.41(c)(1)(i)-(ii). Section 1024.41(d) further provides that if the application is denied for any loan modification option available, the servicer "shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria."

The January 7, 2025 denial letter states Plaintiff was evaluated for a standard modification and that Shellpoint was "unable to achieve an affordable payment by re-amortizing the outstanding debt for 360 months at the market rate." ECF No. 23-1 at 2. The letter goes on to identify other forms of assistance and other potential options to avoid foreclosure. *Id.* It does not, however, state whether Plaintiff was evaluated for VASP or provide a reason why VASP was not offered. *See id.*

The Court agrees with Shellpoint that § 1024.41(c)(1)(ii), standing alone, does not require a servicer to identify every loss mitigation option it considered. Rather, it requires

the written notice to state its determination as to the loss mitigation options, if any, that it will offer. And if the application for an available loan modification option is denied, the servicer is required to state the specific reasons for the determination for that option. Thus, if VASP was a trial or permanent loan modification option "available to" Plaintiff within the meaning of Section 1024.41(c), then Shellpoint's decision not to offer that option constituted a denial under § 1024.41(d). *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01 ("[A]ny determination not to offer a loan modification option, notwithstanding whether a servicer offers a borrower a different loan modification option or other loss mitigation option, constitutes a denial of a loan modification option."). Under such circumstances, Shellpoint was required to state the specific reason for its determination not to offer VASP. *See* 12 C.F.R. § 1024.41(d).

Here, Plaintiff alleges that VASP was an available loss mitigation option for which he was eligible, that Shellpoint was required to evaluate him for that option and indeed told him he was being evaluated for that option, and that Shellpoint's January 7 letter does not provide a written determination as to that option. FAC ¶¶ 90-98. Accepting those allegations as true, Plaintiff has plausibly alleged a violation of section 1024.41(c).

To be clear, § 1024.41 does not require a servicer to offer a borrower any particular loss mitigation option. See 12 C.F.R. § 1024.41(a). Nor does the Court conclude at this stage that Plaintiff was entitled to receive a VASP modification. The relevant question is whether Shellpoint complied with Regulation X's procedural requirements to evaluate Plaintiff for all loss mitigation options available to him and to provide the written

determination required by § 1024.41(c) and (d). Accepting Plaintiff's well-pleaded factual allegations as true and drawing reasonable inferences in his favor, Plaintiff has plausibly alleged that Shellpoint did not do so. Accordingly, the Court denies Shellpoint's Motion as to Plaintiff's First Claim for Relief.

**B. Second Claim for Relief**

Plaintiff's second claim for relief alleges Shellpoint violated RESPA and Regulation X, specifically 12 C.F.R. §§ 1024.35 and 1024.38, by failing to timely and adequately investigate and respond to his QWR/NOE. Shellpoint first argues Plaintiff has failed to state a claim because Plaintiff's QWR did not concern the "servicing" of his loan within the meaning of § 2605(e). The Court need not resolve that issue because, even assuming Plaintiff submitted a valid QWR that triggered Shellpoint's obligations under § 2605(e)(2), the Court agrees with Shellpoint's second argument that Plaintiff has not plausibly alleged damages caused by Shellpoint's alleged failure to comply with those obligations.

Under § 2605(f)(1), a servicer that fails to comply with subsection (e)(2) is liable to the borrower for "an amount equal to the sum of —(A) any actual damages to the borrower as result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section." "Thus, to state a claim for actual damages, a plaintiff must adequately plead a causal link between the specific RESPA violation asserted and the alleged damages." *Ogden v. PNC Bank*, No. 13-CV-01620-MSK-MJW, 2014 WL 4065617, at *2 (D. Colo. Aug. 15, 2014), aff'd, 599 F. App'x 331 (10th Cir. 2015); *see also Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017) ("Significantly, '[a] plaintiff seeking actual damages

under [15 U.S.C.] § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA.' " (first alteration in original) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012)).

Plaintiff has not plausibly alleged the required causal connection here. He alleges Shellpoint's failure to timely investigate and respond to the QWR caused certain damages and losses, including fees, charges, and unlawfully high monthly loan payments that have continued after they ought to have been corrected per the NOE. FAC ¶ 106. He further alleges Shellpoint is liable for actual damages, including emotional distress damages, statutory damages, and reasonable attorneys' fees and costs. *Id.* ¶ 107. But the FAC attributes these injuries to Shellpoint's underlying handling of Plaintiff's loss mitigation application, not its subsequent failure to adequately respond to the September 2, 2025 QWR. Indeed, Plaintiff alleges that the NOE itself asserted that Shellpoint's prior loss mitigation errors had already caused him "severe emotional distress and financial and credit hardship" and requested that Shellpoint remedy those errors by, among other things, removing accrued fees and charges and modifying his loan to provide the benefits he contends he would have received under VASP. ECF No. 23 ¶¶ 67-68. Thus, Plaintiff's alleged damages began before the alleged RESPA violation occurred and are traceable to the alleged failure to provide Plaintiff with a loan modification, not the failure to adequately respond to the QWR. *See Ogden v. PNC Bank*, No. 13-CV-01620-MSK-MJW, 2014 WL 4065617, at *3 (D. Colo. Aug. 15, 2014), *aff'd*, 599 F. App'x 331 (10th Cir. 2015) (finding dismissal appropriate where plaintiff had not identified causal link between defendant's violation of RESPA and her alleged damages for failure to provide information

in response to QWR where plaintiff alleged her emotional distress began before she sent the QWR); *Murray v. Newrez LLC*, No. 24-CV-6160 (ARR), 2025 WL 1158090, at *8 (E.D.N.Y. Apr. 21, 2025) ("[The plaintiff] has also failed to plead that the emotional distress she suffered constitutes actual damages . . . [because] [t]he [a]mended [c]omplaint's allegations of emotional distress are traceable with respect to the terms and effect of the 2011 [l]oan [m]odification, and not to [the] defendants' alleged violations of RESPA.").

Plaintiff's allegation that these damages continued after they "ought to have been corrected" does not cure this deficiency because it assumes that an adequate investigation and response to the QWR necessarily would have resulted in Shellpoint agreeing with Plaintiff's asserted error and modifying his loan on the terms Plaintiff sought. not plausibly alleged that Shellpoint's alleged failure to comply with § 2605(e)(2), as opposed to the underlying loan modification dispute, caused his asserted emotional-distress damages.

Nor does Plaintiff's request for statutory damages save his claim. Section 2605(f)(1)(B) permits additional damages only "in the case of a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f)(1)(B). Plaintiff does not allege facts demonstrating a pattern or practice of RESPA noncompliance beyond Shellpoint's handling of his own QWR. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (holding Plaintiffs failed to state a claim for statutory damages where "Plaintiffs flatly claim a pattern of noncompliance but state no facts other than the assurance that at trial they will present other customers who also did not receive QWR responses from Defendant.").

Accordingly, because Plaintiff has not plausibly alleged actual damages resulting from Shellpoint's alleged failure to comply with its QWR obligations, Plaintiff fails to state a claim under § 2605(e). The Court therefore dismisses Plaintiff's Second Claim for Relief without prejudice.

**C. Third Claim for Relief**

Plaintiff's third claim for relief alleges Shellpoint breached the Deed of Trust and breached the duty of good faith and fair dealing by "failing to properly apply the VA home retention waterfall or submit [Plaintiff]'s VASP application over the course of many months, and by charging resultant fees." ECF No. 23 ¶¶ 108-126. Shellpoint argues this claim should be dismissed because Plaintiff fails to identify a contractual obligation that has been breached and Shellpoint did not assume a duty to act in Plaintiff's best interest. ECF No. 29 at 10-14.

To state a breach of contract claim, Plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). With respect to Plaintiff's allegation that Shellpoint breached the Deed of Trust by failing to properly apply the VA home retention waterfall or submit his VASP application, the Court finds that these allegations do not state a plausible breach of contract claim. Plaintiff generally points to Paragraphs 12 and 14 of the Deed of Trust as the source of Shellpoint's contractual obligations. But neither provision imposes the obligations Plaintiff suggests.

Paragraph 12, titled "Borrower Not Released; Forbearance by Lender Not a Waiver," provides that an extension of time for payment does not release the borrower from liability and any forbearance by the lender in exercising a right or remedy does not constitute a waiver of, or preclude the subsequent exercise of, that right or remedy. *See* ECF No. 23-1 at 33. Nothing in Paragraph 12 requires Shellpoint to provide Plaintiff with any particular form of loss mitigation, much less to apply the VA home retention waterfall or submit a VASP application on Plaintiff's behalf. Indeed, Plaintiff acknowledges that Paragraph 12 "makes clear that the option to provide forbearance and/or loan modifications or other forms of loss mitigation is available but not required of Shellpoint." FAC ¶ 119. Plaintiff therefore has not plausibly alleged that Shellpoint's failure to apply the VA waterfall or submit a VASP application breached Paragraph 12.

Nor has Plaintiff plausibly alleged a breach of Paragraph 14, which is titled "Loan Charges." ECF No. 23-1 at 33. That provision permits the lender to charge fees for services performed in connection with the borrower's default, but prohibits a lender from "charg[ing] fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* Plaintiff's conclusory allegation that Shellpoint breached this provision by "charging resultant fees" stemming from Shellpoint's failure to properly apply the VA home retention waterfall or submit his VASP application is insufficient. FAC ¶¶ 120, 124. Plaintiff does not allege any charged fee that is prohibited by the Deed of Trust or identify a provision of applicable law that prohibited Shellpoint from imposing a particular fee that it charged Plaintiff. The allegation that fees accrued as a consequence of Shellpoint's alleged violations of RESPA or the VA's loss mitigation requirements does not, without

more, establish that those fees were themselves "expressly prohibited" by applicable law. Plaintiff therefore has not plausibly alleged a breach of Paragraph 14.

Nor has Plaintiff plausibly alleged a breach of the implied covenant of good faith and fair dealing. In Colorado, every contract includes an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). The duty of good faith and fair dealing applies "when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* The purpose of this doctrine is to ensure the intentions of the parties are honored and their reasonable expectations are met. *Id.* However, it cannot be used to "contradict terms or conditions for which a party has bargained." *Id.*

Plaintiff contends Paragraph 12 affords Shellpoint discretion to provide loan modifications or other forms of loss mitigation and that Shellpoint was therefore obligated to exercise that discretion in good faith. The Court is not persuaded. Although Paragraph 12 contemplates that Shellpoint may exercise forbearance or agree to modifications of the payment terms, it does not impose an obligation to provide loss mitigation or prescribe the manner in which Shellpoint must exercise that discretion. To hold that the implied covenant nevertheless required Shellpoint to apply the VA home retention waterfall or submit Plaintiff for VASP would inject a substantive contractual obligation that the parties have not bargained for. *See Wells Fargo Realty Advisors Funding, Inc*. v. Uioli, Inc., 872 P.2d 1359, 1363 (Colo. App. 1994) (duty of good faith and fair dealing does not "inject substantive terms into the parties' contract;" rather "it requires only that the parties

perform in good faith the obligations imposed by their agreement."). Accordingly, the Court dismisses Plaintiff's Third Claim for Relief without prejudice.

**D. Fourth Claim for Relief**

Plaintiff's fourth claim for relief alleges Shellpoint violated C.R.S. § 38-40-103 by failing to perform duties imposed upon it by RESPA and the Deed of Trust, including its alleged obligation to properly evaluate Plaintiff for available loss mitigation options. ECF No. 23 ¶¶ 127-34.

Plaintiff alleges Shellpoint violated section 38-40-103(1)(a)(I), which provides:

> Any person who regularly engages in the collection of payments on mortgages and deeds of trust for owners of evidences of debt secured by mortgages or deeds of trust shall promptly credit all payments which are received and which are required to be accepted by such person or his agent and shall promptly perform all duties imposed by law and all duties imposed upon the servicer by such evidences of debt, mortgages, or deeds of trust creating or securing the indebtedness.

C.R.S. § 38-40-103(1)(a)(I). According to Plaintiff, RESPA is a law that imposes duties upon servicers, and because RESPA required Shellpoint to apply the VA's home loan retention waterfall, Shellpoint's failure to do so also violated § 38-40-103(1)(a)(I). But Plaintiff has not plausibly alleged the particular RESPA duty on which this claim depends. As explained above, Regulation X requires a servicer that receives a complete loss mitigation application to "[e]valuate the borrower for all loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(c)(1)(i). But Regulation X expressly provides that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a). Thus, although Regulation X imposes certain duties concerning the evaluation of available loss mitigation options,

Plaintiff has not identified any provision of RESPA or Regulation X requiring Shellpoint to apply the VA's particular home loan retention waterfall. To the extent Plaintiff's claim is also premised on duties allegedly imposed by the Deed of Trust, that theory fails for the reasons discussed above with respect to Plaintiff's Third Claim for Relief. Accordingly, the Court dismisses Plaintiff's Fourth Claim for Relief without prejudice.

**E. Fifth Claim for Relief**

Plaintiff's fifth claim for relief alleges negligence per se based on Shellpoint's alleged violations of RESPA and C.R.S. § 38-40-103(1)(a)(I). To state a claim for negligence per se, Plaintiff must show that (1) defendant violated a statute enacted for public safety; (2) plaintiff was injured; and (3) violation of the statute proximately caused the injury. *Bullock v. Wayne*, 623 F. Supp. 2d 1247, 1252 (D. Colo. 2009). Shellpoint contends this claim fails because RESPA and C.R.S. § 38-40-103 were not enacted for public safety. Because Plaintiff's claim under C.R.S. § 38-40-103 has been dismissed, the Court considers only whether the negligence per se claim survives as to RESPA.

RESPA is a consumer protection statute enacted to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). The question is whether RESPA was enacted for "the public safety." As another Court in this District explained in a case Plaintiff cites in his Opposition, "it's not entirely clear what qualifies as public safety." *Integrity Applied Sci., Inc. v. Clearpoint Chemicals LLC*, No. 1:18-CV-02235-DDD-NYW, 2020 WL 12584444,

at *3 (D. Colo. Apr. 20, 2020). "At a minimum, case law suggests that public safety means that the statute must be intended to protect more than the person who violates the statute." *Id.* In *Integrity*, the Court cited the Colorado state liquor code provision prohibiting the sale of alcohol to a person under 21 as being for the public safety "because furnishing alcohol to such persons 'presents a risk not only to the health and well-being of the drinker, but also to the safety of those with whom the drinker comes into contact.'" *Id.* (citing *Largo Corp. v. Crespin*, 727 P.2d 1098, 1108 (Colo. 1986)). And in *Collins v. Diversified Consultants Inc.,* No. 15-CV-02115-RBJ-NYW, 2017 WL 8942568, at *26 (D. Colo. Feb. 1, 2017), *report and recommendation adopted*, No. 15-CV-2115-RBJ-NYW, 2017 WL 971528 (D. Colo. Mar. 13, 2017), *aff'd*, 754 F. App'x 714 (10th Cir. 2018), the Court reasoned that the Fair Debt Collection Practices Act ("FDCPA"), another federal consumer protection statute, was not enacted for public safety and therefore could not supply the duty necessary for a negligence per se claim. In reaching that conclusion, the Court contrasted the FDCPA with statutes recognized as protecting public safety, including "the state liquor code, a city building code, motor vehicle statutes, and motor vehicle and pedestrian safety ordinances." *Id.* (citing *Hageman v. TSI, Inc.*, 786 P.2d 452, 454 (Colo. App. 1989)). The Court explained that "'the FDCPA was not enacted for the public's safety;' rather, 'it is a federal remedial statute which is not based on any traditional tort law principles.'" *Id.* (quoting *Alleyne v. Midland Mortg. Co.*, No. CIV.A. 05-CV-02412PS, 2006 WL 2860811, at *13 (D. Colo. Sept. 12, 2006)).

The Court finds the reasoning in *Collins* persuasive. Like the FDCPA, RESPA is a federal consumer protection statute directed at regulating practices within a particular

financial relationship. Its stated purposes concern providing consumers with information about the settlement process and protecting them from unnecessarily high settlement charges and abusive settlement practices. 12 U.S.C. § 2601(a). Those purposes differ from the protection against risks to public health and physical safety reflected in the statutes identified in *Collins* and *Integrity*. That RESPA is intended to protect consumers from abusive practices does not, without more, establish that it was enacted for "the public safety" as that term is used in Colorado's negligence per se doctrine. Accordingly, the Court concludes that RESPA does not constitute a public-safety statute capable of supporting Plaintiff's negligence per se claim. Plaintiff's Fifth Claim for Relief is therefore dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss, ECF No. 29 is GRANTED IN PART as to Plaintiff's Second, Third, Fourth, and Fifth Claims for Relief and DENIED IN PART as to Plaintiff's First Claim for Relief;
2. Plaintiff's Second, Third, Fourth, and Fifth Claims for Relief are DISMISSED WITHOUT PREJUDICE;
3. If Plaintiff chooses to file a motion to amend, he must do so by October 30, 2026.

DATED: September 30, 2026

BY THE COURT:

____________________________________
REGINA M. RODRIGUEZ
United States District Judge